**HEALTH OCCUPATIONS — MORTICIANS — BUSINESSES AND PROFESSIONS — CEMETERIES — SALE OF CASKETS ON A "PRE-NEED" BASIS**

December 21, 1995

*Mr. Thomas J. Murphy, III*
*President*
*State Board of Morticians*

You have requested our opinion on several issues related to the pre-need sale of caskets:

1.      Does the Maryland Morticians Act prohibit a person other than a licensed mortician, licensed funeral director, or a holder of a surviving spouse license (hereafter "licensee") from selling caskets on a pre-need basis?[1] In particular, does the Act prohibit a cemetery owner from doing so?

2.      If the Act prohibits a cemetery owner or other non-licensee from selling caskets on a pre-need basis, may the State Board of Morticians seek injunctive relief against a person who does so?

3.      May a cemetery owner who is also a licensee sell caskets through the cemetery?

Our opinion is as follows:

1.      The Morticians Act does not prohibit a cemetery or other person from selling a casket by means of a pre-need contract that complies with Title 5, Subtitle 4 of the Business Regulation ("BR") Article, Maryland Code.

---

[1] Your question is limited to the sale of caskets on a pre-need basis. We are aware of no statute limiting the sale of caskets on an at-need basis or under other circumstances where delivery of the casket is made upon payment of the price. This opinion addresses only the situation in which an individual pays money to the seller of a casket in exchange for a promise of delivery when the casket will be needed.

2.    The Board does not have authority to bring an injunction action against a person who is unlawfully selling caskets on a pre-need basis.

3.    A cemetery owner who is also a licensee may sell caskets on a pre-need basis in either capacity.

# I

## Regulation of Pre-Need Contracts

### A.    *Introduction*

The Maryland Morticians Act carefully regulates pre-need contracts.  When a licensee sells a casket on a pre-need basis, that licensee must comply with detailed escrow and other requirements. §7-405 of the Health Occupations ("HO") Article, Maryland Code. Because the Act expressly provides that a "pre-need contract" includes "a casket," and only licensees may sell "pre-need contracts," many licensees understandably believe that they alone may sell caskets on a pre-need basis.  Considered by itself, this point of view is logical.

But as Oliver Wendell Holmes famously put it, "a page of history is worth a volume of logic." *New York Trust Co. v. Eisner,* 256 U.S. 345, 349 (1921).  The history of the General Assembly's regulation of pre-need transactions is a tortuous one, marked by drafting problems and unexplained changes in wording.  Yet this history, which we shall set out in detail, yields a firm conclusion: licensees do not have a monopoly over the pre-need sale of caskets.

### B.    *The Evolution of Parallel Regulatory Regimes*

#### 1.    <u>1969 – Attempting to regulate pre-need contracts</u>.

The General Assembly first tried to regulate pre-need contracts in Chapter 684 of the Laws of Maryland 1969.  Chapter 684 contained the following definition of "pre-need contracts":

> For purposes of this section pre-need contracts are defined to include the entering into of any contract, plan or agreement

> wherein a seller agrees to furnish to or for the use of a living person at the future time of death embalming, cremating, or other services and/or the delivery of funeral or burial caskets, vaults, and clothing such as are normally furnished by licensed funeral directors and embalmers in the ordinary and normal course of such business. This section shall not apply to the sale of cemetery lots, grave sites, mausoleums, monuments, lawn crypts, vaults, or other merchandise or services sold by others not in connection with the practice of the profession of a funeral director and an embalmer.

Former Article 43, §366A(b). The term "seller" was defined as a licensed funeral director and embalmer, and no one other than a seller was authorized to enter a pre-need contract. Former Article 43, §366A(a).

These provisions did not achieve the evident legislative goal of limiting the pre-need sale of funerary goods and services, including caskets, to licensees. If a pre-need contract was defined as an agreement by a seller, and a seller was defined as a licensee, then a non-licensee's contract to sell funerary goods on a pre-need basis was not a "pre-need contract" as defined in Chapter 684 and so escaped regulation.

### 2.  <u>1981 – Fixing the problem and creating a monopoly.</u>

The Revisor of Statutes pointed out the regulatory gap when the Health Occupations ("HO") Article was enacted in 1981:

> It is not clear what class of individuals the General Assembly intended to regulate in former Art. 43, §366A(a) and (b).

> Former Art. 43, §366A(b) defined a "pre-need contract" as one in which "a seller" agreed to provide certain goods and services. Former Art. 43, §366A(a) defined "seller" as a licensed funeral director and embalmer. That subsection also purported to prohibit any

person other than a licensed funeral director and embalmer from executing a pre-need contract. However, because a pre-need contract by definition is one made by a licensed funeral director and embalmer, a person who is not a licensed funeral director and embalmer may make a similar contract without violating the prohibition.

Chapter 8 of the Laws of Maryland 1981, Revisor's Note to HO §6-404. In the same note, the Revisor explained Code Revision's solution to the problem and flagged a regulatory issue for the General Assembly:

> After considering the exceptions to the definition of a "pre-need contract" that were enumerated in former Art. 43, §366A(b), the Commission to Revise the Annotated Code: (1) has structured the definition of "pre-need contract" in §6-101 of this title in terms of what the contract did rather than who made it; (2) has defined "seller" in this section as any person who makes a pre-need contract; and (3) has limited those who are authorized to make a pre-need contract to licensed morticians.

> Because of the scope of the goods and services that are included in the term "pre-need contract," the class of persons most affected under this revision are those associated with the practice of mortuary science. Because only a licensed mortician is authorized under this section and §6-504 of the this title to make a pre-need contract, any other person who is a "seller" ... who does so incurs penalties under §6-508 of this title.

> Some other persons (*e.g.* casket salesmen) also may fall within these revised provisions. Therefore, the General Assembly may wish to adjust the definition of "seller" accordingly.

The General Assembly did not "wish to adjust the definition of 'seller'"; instead, it retained Code Revision's proposed definition of "seller" to mean "a person who agrees to provide services or merchandise, directly or indirectly, under a pre-need contract." HO §6-404(a) (1981). The next subsection, HO §6-404(b) (1981), limited to licensed morticians those who "may offer or agree, directly or indirectly, to provide services or merchandise under a pre-need contract."[2]

The 1981 definition of "pre-need contract," codified in HO §6-101(n), was as follows:

> (1) "Pre-need contract" means an agreement to provide to a then living individual on the death of that individual:
>
> (i) A service, including embalming or cremation, that a mortician normally provides in the ordinary course of business; or
>
> (ii) Merchandise, including a casket, vault, or clothing, that a mortician normally provides in the ordinary course of business.
>
> (2) "Pre-need contract" does not include an agreement to provide to a then living individual on the death of that individual:
>
> (i) A cemetery lot or grave site;
>
> (ii) A mausoleum, monument, lawn crypt; or
>
> (iii) Any other merchandise or service that is not sold in connection with the practice of mortuary science.

---

[2] That same session, the General Assembly expanded the authority to execute pre-need contracts to include licensed funeral directors and surviving spouses. *See* Chapter 184 of the Laws of Maryland 1981.

As of 1981, then, the answer was clear: No one other than a licensee could sell a casket on a pre-need basis.  The exclusion in former HO §6-101(n)(2)(iii) did not authorize a cemetery to sell caskets on a pre-need basis, because caskets *were* "sold in connection with the practice of mortuary science"; therefore, the pre-need sale of caskets was exclusively the province of licensees.  Just as the Revisor of Statutes stated, "casket salesmen" could not sell caskets on a pre-need basis.

### 3.    1984 – Regulating pre-need contracts for burial goods and services.

Three years later, the General Assembly decided to regulate "pre-need burial contracts."[3]  In Chapter 765 of the Laws of Maryland 1984, the General Assembly imposed certain escrow and other requirements on these contracts. The term "pre-need burial contract" was defined as "any instrument in writing dated on or after October 1, 1984, pursuant to which pre-need goods and services are to be sold and delivered or performed."  Former Article 23, §165B(a)(11).  The key term "goods and services" was defined as follows: "'Goods and services' includes, but is not limited to, vaults, grave liners, urns, memorials, monuments, scrolls, vases, opening and closing of graves, and other goods and services sold in connection with the internment, cremation, or other disposition of human remains."  Former Article 23, §165B(a)(3)(i).[4]

The phrase "other goods … sold in connection with the interment of human remains" was surely broad enough to include a casket.  The terms "casket" and "coffin" are synonymous.  *See Random House Dictionary of the English Language* 322 (2d ed. 1987) ("casket" defined as "coffin").  A coffin is "the box or case in which the body of a dead person is placed for burial; casket." *Id.* at 399.

---

[3] In the Morticians Act, the General Assembly used the spelling "pre-need."  In enactments dealing with other persons, the General Assembly used the spelling "preneed."  To avoid reader distraction, this opinion will henceforth adopt a single spelling no matter the context: "pre-need."

[4] Interment space, cemetery lots, and grave sites were excluded from the term "goods and services."  §165B(a)(3)(ii).

Chapter 765 of the Laws of Maryland 1984 expressly preserved the existing regulatory regime applicable to licensees' pre-need contracts: "Nothing in this section shall be construed to apply to pre-need contracts entered into by those persons engaged in the practice of the profession of a mortician or funeral director, as defined and regulated by the Health Occupations Article of the Annotated Code of Maryland." Former Article 23, §165B(k)(3).

Unlike its counterpart in the Health Occupations Article, Chapter 765's regulation of pre-need contracts did *not* contain a provision restricting who could sell "pre-need burial goods and services." Indeed, the basic regulatory requirement was framed in terms of "a person": "Except as provided in this section, a person … may not offer to sell or sell pre-need goods and services if delivery … may be delayed later than 120 days after the receipt of … payment …." Former Article 23, §165B(b). The term "person" was broadly defined to mean "an individual, firm, corporation, partnership, or any other form of entity selling pre-need goods and services." Former Article 23, §165B(a)(7). Other provisions referred simply to "sellers," a term that Chapter 765 left undefined. Chapter 765 also contained repeated references to the obligations of "cemeteries." *See* former Article 23, §165B(c)(1), (c)(4), (h)(3), (i)(4), and (k)(4). These references to cemeteries might arguably mean that the General Assembly intended to limit pre-need contracts under Chapter 765 to cemeteries. But the statute's key language did not do so, and the reference to cemeteries more likely reflects a legislative understanding of the market at the time – that cemeteries were the entities most extensively engaged in the business of pre-need burial contracts. We do not read Chapter 765 as limiting pre-need burial contracts to cemeteries.

Hence, as of 1984, the General Assembly had allowed licensees to sell caskets on a pre-need basis, subject to the requirements in the Maryland Morticians Act; and had allowed cemeteries and others to sell caskets on a pre-need basis, subject to the requirements of former Article 23, §165B.

### 4.    1986 – Amending the funerary pre-need law.

In Chapter 728 of the Laws of Maryland 1986, the General Assembly repealed the exclusion from the definition of "pre-need contract" that had appeared in former HO §6-101(n)(2). The

exclusion covered cemetery lots, monuments, and other goods or services "not sold in connection with the practice of mortuary science." The bill was introduced with the exclusion marked for repeal, and we can find no discussion in the legislative history explaining the underlying purpose. We can speculate, however, that the General Assembly, having regulated pre-need burial contracts in Chapter 765 of the Laws of Maryland 1984, did not want to leave the misleading impression that former HO §6-101(n)(2) was a separate authorization for the sale of burial goods on a pre-need basis.

The 1986 enactment also reworded the core definition of "pre-need contract" to mean "an agreement between a consumer and a licensed funeral director and a licensed mortician to provide any goods and services purchased prior to the time of death." The purpose of this recasting, according to the report of the House Environmental Matters Committee, was "to exclude other types of pre-need contracts (such as insurance)." Although pre-need burial contracts were not mentioned in the legislative history, they are certainly among the "other types of pre-need contracts …" with which the General Assembly was familiar, having legislated on the subject only two years before.

Thus, it is reasonable to construe the 1986 amendment as a confirmation of the legislative decision that the provisions on pre-need contracts in the Morticians Act do not affect the prerogative of cemeteries and others to sell interment-related items − including a casket − on a pre-need basis, subject to the requirements applicable to that type of pre-need contract.

## C.    *Current Provisions*

### 1.    Morticians Act

As currently worded, HO §7-405 provides that only a licensee may "offer or agree … to provide services or merchandise under a pre-need contract." Conversely, HO §7-504 prohibits anyone other than a licensee from offering or agreeing to provide "services or merchandise under a pre-need contract."

The statute provides various protections to the buyer of a pre-need contract, including the "seller's" obligation to deposit all of the payments into a trust account. HO §7-405. A "seller" is "a

person who agrees to provide services or merchandise … under a pre-need contract."  HO §7-405(a).  A "pre-need contract" is defined in HO §7-101(q) as follows:

> "Pre-need contract" means an agreement between a consumer and a licensed funeral director, licensed mortician, or surviving spouse to provide any goods and services purchased prior to the time of death.  Goods and services shall include:
>
> (1) A service, including any form of preservation and disposition, that a mortician normally provides in the ordinary course of business; or
>
> (2) Merchandise, including a casket, vault, or clothing, that a mortician normally provides in the ordinary course of business.

## 2.    **Burial goods and services.**

In 1992, the General Assembly recodified Chapter 765's provisions on pre-need burial contracts into Subtitle 4 of Title 5 of the Business Regulation ("BR") Article.  BR §§5-404 through 5-410 impose various requirements on "pre-need burial contracts." This term is defined as "a written instrument under which pre-need goods or pre-need services are to be sold and delivered or performed."  BR §5-401(d).  The term "pre-need goods" is defined in BR §5-401(e) as follows:

> (1) "Pre-need goods" means goods that are sold:
>
> (i)   Before the buyer's death; and
> (ii)  In connection with burial.
>
> (2) "Pre-need goods" includes:
>
> (i) a grave liner;
> (ii) a memorial;
> (iii) a monument;
> (iv) a scroll;

(v)  an urn;
(vi) a vase; and
(vii) a vault.

(3)  "Pre-need goods" does not include
burial space.

BR §5-401(e).  The list of pre-need goods in BR §8-401(e) may not be read to *exclude* caskets, however, simply because that term is not in the list: "The words 'include' or 'including' mean, unless the context requires otherwise, includes or including by way of illustration and not by way of limitation."  Article 1, §30.

The compliance requirements are framed in terms of a "seller."  *See* BR §§5-411 and 5-412(a).  "Seller" means "a person who sells pre-need goods or pre-need services."  BR §5-401(g).  The term "person" is broadly inclusive.  "'Person' means an individual, receiver, trustee, guardian, personal representative, fiduciary, representative of any kind, partnership, firm, association, corporation, or other entity."  BR §1-101(g).  Thus, although this regulatory statute is in the "Cemeteries" title of the Business Regulation Article and refers to cemeteries in various provisions, we cannot conclude that pre-need burial contracts are restricted to cemeteries, anymore than they were under Chapter 765.  The Revisor's Notes confirm that none of the drafting changes was intended to have a substantive effect.

### *D.    Conclusion*

The Morticians Act, which limits to licensees those who may sell caskets on a pre-need basis, cannot be considered in isolation.  The Act must be construed so as to give effect to the later-enacted BR Title 5, Subtitle 4.  That statute's definition of "pre-need goods" – "goods that are sold ... in connection with burial" – surely extends to caskets.  *See* Part IB3 above.

These two statutory schemes present the familiar problem of overlapping authority.  This problem typically presents itself when the same activity falls within the scope of practice of two health occupations.  *See* 80 *Opinions of the Attorney General* 180 (1995) (veterinarians and acupuncturists may each perform acupuncture on animals); 76 *Opinions of the Attorney General* 3 (1991)

(chiropractors and physical therapists may each perform certain manipulations). The issue of pre-need casket sales is no different in principle: Licensees may sell caskets on a pre-need basis under the Morticians Act, and cemeteries and others may sell caskets on a pre-need basis under BR Title 5, Subtitle 4.[5] Those who do so under the latter statute do not violate the Morticians Act.

That the two statutes differ in their regulatory details is immaterial. To be sure, the regulation of pre-need burial contracts under BR Title 5, Subtitle 4 has significant differences from the regulation of pre-need contracts under the Morticians Act. For example, BR Title 5, Subtitle 4 requires much less money to be held in trust. While these differences may raise a policy issue that the General Assembly might want to address, they do not negate the scope of the "pre-need goods" that cemeteries and others are allowed to sell. In our opinion, "pre-need goods" include caskets.


## II

### The Board's Remedial Authority

Someone who sells caskets on a pre-need basis but complies with neither the Morticians Act nor BR Title 5, Subtitle 4 is subject to a range of potential civil and criminal sanctions. HO §7-508; BR §§5-411 and 5-412. If the Board becomes aware of an instance of this illegal activity, it may refer the matter to this office or to the appropriate State's Attorney.

However, the Morticians Act does not grant to the Board authority to seek an injunction against someone who is unlawfully entering pre-need contracts. When the General Assembly has decided to grant a regulatory board authority to seek injunctive relief against conduct that is also a crime, it has legislated that authority explicitly. *See* HO §14-206(e) (Board of Physician Quality

---

[5] If an individual is a licensee and owns a cemetery, that individual may sell caskets in either capacity. If the individual sells a casket from his or her funeral establishment, presumably as part of a package of funeral goods and services, the provisions of the Morticians Act would apply. If the individual does so from his or her cemetery, the provisions of BR Title 5, Subtitle 4 would apply.

Assurance may seek to enjoin practice of medicine without a license).

### III

### Conclusion

In summary, it is our opinion that:

1.    The Morticians Act does not prohibit anyone from selling a casket on a pre-need basis, if the seller complies with BR Title 5, Subtitle 4.

2.    The Board does not have authority to bring an injunction action against a person who is unlawfully selling caskets on a pre-need basis.

3.    A cemetery owner who is also a licensee may sell caskets on a pre-need basis in either capacity.

> J. Joseph Curran, Jr.
> *Attorney General*
>
> Jack Schwartz
> *Chief Counsel*
>   *Opinions & Advice*

***Editor's Note:***

Cemeteries are subject to additional regulation as a result of Chapter 675 of the Laws of Maryland 1997.